UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

KAREN PINTOR SOLLANO, Petitioner,

v. Civil Action No. 4:26-cv-451-RGJ

SAMUEL OLSON, et al., Respondents.

* * * * *

## MEMORANDUM OPINION & ORDER

This matter comes before the court on the Petition for writ of habeas corpus filed by Petitioner Karen Sollano ("Sollano"). [DE 1]. The United States as counsel for the Federal Respondents ("Respondents") responded [DE 7], and Sollano replied [DE 10]. This matter is ripe. For the reasons below, the Petition [DE 1] is **GRANTED**.

## I. BACKGROUND

Sollano is a native and citizen of Mexico who entered the United States without inspection in December 1998. [DE 1 at 2; DE 7 at 73–74]. Sollano is the mother of two United States citizens, [DE 1-3 at 37–38]. On or about June 24, 2026, Sollano was stopped while driving in Clarksville, Indiana. [DE 7-1 at 83]. A local officer contacted Immigration and Customs Enforcement ("ICE") and reported that Sollano lacked a valid driver's license and lawful immigration status. [DE 7 at 74]. ICE took her into custody pursuant to a Form I-200 warrant and issued a Form I-862 Notice to Appear ("NTA") that same day. [*Id.*]. The NTA charged her with being present in the United States without admission or parole, and with lacking a valid visa or other required entry document. [*Id.*].[1] She was not issued a Form I-286.

[1] The parties dispute whether ICE served the NTA. [DE 1 at 2; DE 7 at 74].

Sollano has been detained at the Grayson County Detention Center in Leitchfield, Kentucky, since June 24, 2026, and has not been provided a bond hearing by Respondents. [DE 7-3 at 90; DE 1 at 95]. At the time of filing the subject Petition, she was scheduled for a master hearing before the Cleveland Immigration Court on July 7, 2026. [DE 1 at 2].[2] The parties agree that Sollano is detained under § 1226(a). [DE 10 at 96; DE 7 at 74]. Sollano's criminal history, before her present detention, consists of a single 2005 speeding citation in Floyd County, Indiana, for which she paid the fine in full. [DE 1-4 at 40].

## II. DISCUSSION

### A. Section 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer generally takes a noncitizen into custody "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

Section 1226(a) and its implementing regulations create extensive procedural protections which are grounded in due process principles. The Supreme Court has recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing

[2] The outcome of this hearing is unclear.

danger to the community. *Id.* at 690–92. Due process requires the Government to exercise the discretion afforded by § 1226(a) and determine, on an individualized basis, whether to detain or release a noncitizen under the statute. Otherwise, a noncitizen subject to § 1226(a) would be effectively subject to mandatory detention, in direct contravention of Congress's determination that detention under § 1226(a) is not required. There would also be an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690. Thus, the regulations provide that DHS officers will conduct an initial custody determination to decide whether to release or detain the person under Section 1226. 8 C.F.R. § 236.1(c)(8). The DHS officer must release the noncitizen if the noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

Likewise, after the initial determination is made to detain the noncitizen pursuant to § 1226(a), due process requires the government to provide notice and an opportunity for the noncitizen to request a request a custody determination hearing. To that end, the regulations contemplate that DHS will utilize a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g). This Form I-286 is especially important because it includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. *See also Sanchez Marquez v. Warden, Desert View Facility*, No. 5:26-CV-05368-MBK, 2026 WL 2948874, at *5 (C.D. Cal. Oct. 1, 2026) ("Absent

an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one.").

These procedures are necessary to satisfy the "most basic requirements of due process," namely, notice and an opportunity to be heard. *See Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005). Indeed, in the context of immigration removal proceedings, the Sixth Circuit has recognized that "it is 'well established' that the Fifth Amendment 'entitles' non-citizens to due process." This includes the constitutional requirements of 'fair notice' and 'even-handed administration of the law.'" *Shuti v. Lynch*, 828 F.3d 440, 445 (6th Cir. 2016). There is no reason that these fundamental requirements should not apply equally to the government's decision to impose detention pending removal pursuant to § 1226(a). After all, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690.

**B. Prudential Exhaustion**

As a basis for habeas relief, Sollano argues that her "continued detention without an individualized custody determination violates her due process rights." [DE 10 at 95]. The parties agree that 8 U.S.C. § 1226(a) governs her detention and that she has not requested a bond hearing from DHS. [DE 7 at 74–75; DE 10 at 95–96]. Federal Respondents contend that, under 8 C.F.R. §§ 1003.19(b) and 1236.1(d)(1), Sollano or her counsel must request a custody redetermination hearing before the Immigration Court. [DE 7 at 75–77]. They represent that, following *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732–35 (6th Cir. 2026), the Immigration Court has been hearing bond requests on the merits for individuals detained within the Sixth Circuit who, like Sollano, entered without inspection. [DE 7 at 77]. Because that process has been

available to Sollano since her arrest, Federal Respondents ask this Court to require prudential exhaustion and dismiss the petition. [*Id.* at 77–81].

In reply, Sollano argues that requesting a bond hearing would have been futile because ICE's July 8, 2025 interim guidance and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), treat noncitizens who entered without inspection as categorically ineligible for bond. [DE 10 at 96–97]. She further argues that her claims present questions of statutory interpretation and constitutional law that do not require agency expertise and that neither the IJ nor the Board of Immigration Appeals ("BIA") can adjudicate her constitutional claims. [*Id.* at 97–98]. In particular, she contends that a custody redetermination hearing would not remedy the alleged defects in the warrant and procedure by which ICE took her into custody. [*Id.* at 98–101].

Having considered the parties' arguments and the relevant law, the Court declines to require administrative exhaustion. The Court accepts Respondents' representation that the Immigration Court "is now holding bond hearings on the merits" in cases like Sollano's. [DE 7 at 77]. Ordinarily, a petitioner who can obtain review of ICE's custody decision by requesting a bond hearing should pursue that remedy before seeking habeas relief. The procedure Federal Respondents invoke contemplates review by an IJ "[a]fter an initial custody determination by the district director." 8 C.F.R. § 1236.1(d)(1).

But here, the record shows that Respondents failed to follow the required processes both for making an *initial* custody determination and in providing Sollano notice of her custody determination and opportunity to challenge that determination before an IJ. There is no evidence that when Sollano was detained by ICE officers any individualized assessment was made as to whether her "release would not pose a danger to property or persons, and [whether she] is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). The Form I-213 submitted by

Respondents merely indicates that Sollano was "processed as a WA/NTA and detained for removal." [DE 7-1 at 84]. No further details were provided.

In light of the critical importance of the procedures available under § 1226(a) at the outset of an individual's detention, numerous district courts in the Second and Ninth Circuits have recognized that "section 1226(a) requires an individualized custody determination before detention and failure to do so is 'in itself [ ] a violation of [petitioner's] due process rights.'" *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Sanchez*, 2026 WL 2948874, at *5 (collecting cases). In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip" Petitioner of his freedom. *Lopez Benitez v. Francis,* 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) (citation modified).

Moreover, Respondents have not provided Sollano's Form I-286, Notice of Initial Custody Determination, despite the Court's order requesting it. [DE 5 at 68 (requesting "Form I-286 Notice of Custody Determination"); *see also id.* at 69 ("(7) What forms, if any, did CBP, DHS, or ICE provide to Sollano, and when and how were those forms served? (8) Were the forms provided, or read, in Sollano's native language?")].[3] Accordingly, the Court finds that a Form I-286 does not exist as to Sollano, and that Respondents have failed to comply with their statutory, regulatory, and constitutional obligations under 8 U.S.C. § 1226(a), 8 C.F.R. § 236.1, and the Due Process

[3] The Court's order requests this information "as applicable." [DE 5 at 69]. For the reasons discussed herein, whether Sollano was served an I-286 or otherwise provided notice of her custody determination and right to a bond hearing are clearly applicable to Respondents' prudential exhaustion argument.

Clause of the Fifth Amendment. *See infra*, Section II.C (discussing procedural due process requirements).

Finally, none of the ordinary considerations which militate in favor of prudential exhaustion apply to Sollano. Respondents ask the Court to follow other courts in the Sixth Circuit in applying the Ninth Circuit's test for prudential exhaustion. *See, e.g.*, *Torrealba v. U.S. Dept. of Homeland Sec.*, 2025 WL 2444114, at *8–10, n.16 (N.D. Ohio Aug. 25, 2025). Under that test, administrative exhaustion should be required when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Torrealba*, 2025 WL 2444114 at *9 (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).

Starting with the first factor, courts applying the Ninth Circuit's test have explained that "agency expertise is not necessary to generate a proper record or reach a proper decision," when, as here, "[i]t is undisputed by the parties before the Court that petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a)." *Hernandez Burruel v. Murray*, No. 1:25-cv-01569-DAD-AC, 2025 WL 3240356, at *3 (E.D. Cal. Nov. 20, 2025) ("Whether this court or an immigration court directs that one be provided to petitioner is immaterial.").

As to the second factor, for the reasons discussed above, the "administrative scheme" has already been bypassed. It would be unjust and absurd to require Sollano to exhaust an administrative process that Respondents themselves failed to follow. A custody redetermination hearing without pre-deprivation process flouts the regulatory scheme that empowers IJs to hear "*[a]ppeals* from custody decisions" "*[a]fter* an initial custody determination." 8 C.F.R. § 236.1(d) (emphasis added); *Angeles-Pena v. Blanche*, No. 2:26-CV-02154-RFB-EJY, 2026 WL 2280939,

at *10 (D. Nev. Aug. 7, 2026). And to the extent that Respondents maintain that Sollano is eligible for a bond hearing, it is unknown why Respondents have not facilitated such a hearing in light of Sollano initiating this action on July 1, 2026 [DE 1]—the initiation of such action being a clear indication of a request for bond hearing.

Lastly, it is not clear that administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Accepting Respondents' representation that the Immigration Court would consider her request on the merits, a bond hearing could result in Sollano's release. [DE 7 at 77]. Sollano's challenge, however, concerns the process ICE afforded her when it first detained her. ICE did not provide her with a Form I-286, and the record leaves unclear whether ICE made an individualized custody determination at the outset. [DE 7-1 at 84]. A bond hearing would address whether Sollano should remain in custody based on her risk of flight or danger to the community. 8 C.F.R. § 236.1(c)(8). It would leave unresolved whether ICE afforded her adequate process before continuing to detain her for the last five months. Accordingly, this factor weighs against requiring prudential exhaustion. The Court will therefore reach the merits of Sollano's due process claims.

**C. Due Process**

As discussed, Sollano is entitled to individualized bond hearing. However, she has not received one. This Court has repeatedly held that detention of noncitizens without a custody re-determination hearing under § 1226(a) violates the Due Process Clause of the Fifth Amendment and makes their continued detention unlawful. *See, e.g.*, *Reyna Mercedes Alcerro-Flores v. Jason Woosley, et al.*, No. 4:26-CV-510-RGJ, 2026 WL 3206929, at *5 (W.D. Ky. Oct. 26, 2026) (quoting *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026)).

Additionally, the Court finds Sollano did not receive adequate notice of ICE's initial custody determination. Courts apply the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 893 (1976) to determine what procedures are mandated by the Due Process clause of the Fifth Amendment. The *Mathews* factors include (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

Applying the *Mathews* factors here is straightforward: (1) Sollano has a strong private liberty interest in being free from detention; (2) there is a high risk of erroneous deprivation because ICE failed to make an initial individualized custody determination pursuant to 8 C.F.R. § 236.1(c)(8) and to provide Sollano notice of her custody determination and opportunity to challenge that determination before an IJ; and (3) the government has little or no legitimate interest in detaining Sollano without first determining whether such detention would further the purpose of ensuring her appearance at future proceedings or preventing danger to the community, *Zadvydas*, 533 U.S. at 690–92; likewise, the government's interest in withholding a Form I-286 (or another adequate form of notice of ICE's custody determination and opportunity to request a custody redetermination hearing) serves no legitimate purpose and is minimally burdensome. In fact, given the "substantial social and financial costs" resulting from needless executive detention, the public interest against providing such basic notice—notice which is already prescribed by regulation—is "uncertain at best, and may well be negative." *Hernandez-Lara*, 10 F.4th at 33 ("[N]oncitizens subject to immigration detention include spouses, children, and parents of U.S. citizens, caretakers of children and elderly relatives, and leaders in religious, cultural, and social

groups. The needless detention of those individuals thus 'separates families and removes from the community breadwinners, caregivers, parents, siblings and employees.'").

**D. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."). That is especially true where, as here, Respondents have articulated no legitimate interest in detaining Sollano. *Alcerro-Flores,* 2026 WL 3206929, at *5 (ordering release and requiring bond hearing prior to the petitioner's re-detention).

Accordingly, the Court will order Sollano's release. Should Respondents re-detain Sollano, absent a material change in circumstances, they must provide Sollano with a bond hearing pursuant to Section 1226(a).

**III. CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Sollano immediately because of the unlawful detention in violation of her due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket by **November 23, 2026**.

November 20, 2026

Rebecca Grady Jennings, District Judge
United States District Court